The next case for argument, 20-3630, United States v. Devon Jeffries Ms. Harrington, have you reserved time for rebuttal? No, I did not. Whenever you're ready. Good morning, Your Honors. May it please the Court? My name is Jillian Harrington, and I was assigned by this Court to represent Devon Jeffries on this direct appeal. I did not represent Mr. Jeffries in the District Court below. As Your Honors are, of course, aware, we raised four issues in Mr. Jeffries' appellant brief. The first is whether the District Court abused her discretion in allowing testimony regarding the alleged assault of Ms. Tavera outside of the apartment building where the alleged Hobbs Act robbery took place. The second issue is whether the Court abused her discretion in refusing to declare a mistrial after the District Court herself revealed that three pieces of evidence had been sent back into the jury room that had the notation RAPE 1 on the NYPD packaging of the evidence. The third issue is whether Mr. Jeffries was denied his constitutional right to the effective assistance of counsel. And the final issue, which is actually where I'd like to begin, is whether or not this Court must dismiss Count 3 of the indictment. Well, can I just jump in? I believe that the government has conceded that Count 3 should be vacated. Yes. So perhaps you could turn to a different point. Absolutely. I just wanted to briefly just say that the government has conceded that Count 3 must be dismissed given the Supreme Court's recent rulings. Thank you very much. Could you remind me what the sentence was on that count and how it was effected? The sentence, I believe- Does the case have to go back for resentencing? This is a real question. It is my understanding that that is how this Court is handling that, that it would have to go back for resentencing. Because that is a consecutive sentence, as it has to be on 924C charges. I see. So really- And you're allowed, actually, to move the sentence up on the other counts. The Court could conceivably do that. Could, but wouldn't that be- There is a case, a Supreme Court case, that says that you can reconsider everything under those circumstances and resentence the defendant. Sure, and I guess if that were the case, then I'd be right back here before you. I don't know that you'd fare very well, but in any event- In any event, it must be dismissed given those two decisions, Taylor and Davis. If it goes back for resentencing, do you agree that the plea stands? Do I agree that the- The plea stands. The plea. Did he plead here? I don't think I understand the question. No, this was a jury trial. Well, what are you- you want just resentencing, or do you want a new trial? No, just that- just count three has to be dismissed on that issue. And so all that would happen for a remand is resentencing? If that's the only issue that this court agrees with me on. Yes. If that's the only issue, you would not be claiming a retrial because of a sentence on count three? No, Your Honor. No, it would just be that that- because it was a consecutive sentence, I just would argue that it needs to be chopped off of the entire- of the sentence since it was consecutive. Since the court agrees that that- because the government consented, I'll turn to point one, if Your Honors will allow me, which is- which was that before the trial started, the government had made a motion in Limine to bring in evidence of this sexual assault that Ms. Tavera alleged happened outside of the apartment. Defense counsel was successful in her argument and convinced the district court that this evidence was way too prejudicial. Well, it was a- it was a rape, wasn't it? Well, it was- it was a- it was an actual rape. Yes. And therefore, so- so then there's a difference between sexual assault and rape. And my understanding is that the witness did testify to the assault, but not the rape. She did. She did. She was permitted to testify after the government claimed that defense counsel had opened the door to the evidence by asking the question- I'm paraphrasing- nobody was hurt, correct? And then because she had been instructed to do so, Ms. Tavera's mother, who was the witness on the stand at this time, Ms. Cordero, testified that nobody had been injured. The government argued that this had opened the door to testimony about what happened outside. Do you disagree with that? I do. You don't think that was a door opening? I don't. In the context of- Did it leave the jury with the impression that nobody was hurt? Well, here's- the defense counsel was given the opportunity to cure that error. When she- at the sidebar, she admitted that it was an inartful question. She should not have asked that question. Inartful suggests just poor choice of words. The judge thought it left the jury with a false impression. Yes. Did you dispute that? Well, as counsel had explained to the district court was that what she meant was that nobody was hurt in the apartment. Regardless of what she meant, did the answer leave the jury with a false impression? At that moment, yes. Well, that's classic door opening, isn't it? Well, but what defense counsel offered to do and ultimately was allowed to do, and it should have stopped there, was to get back up and continue her cross-examination, which was still going on, and ask- and withdraw that question and then ask a new question, which she did, limiting what happened to what- limiting her question to what happened within the apartment. And tell the jury to ignore the previous answer? Yes. Do you think that would have been enough? Well, we do that all the time. We ask juries all the time to ignore- Usually not when it's defense counsel that has elicited the damaging testimony, or even sometimes when the government does it. We don't usually say all the time. I know it's- judges do say to the jury with a straight face, disregard that last comment. But if it's prejudicial, isn't that a little different if it's- But it often is. I mean, we make this argument, especially as a criminal defense attorney, I've made this argument many times unsuccessfully, that we ask a lot of our juries. We ask them to put something in their head and then remove it and pretend it didn't happen. You know, as human beings, we all know that's very difficult, but the courts have said that- Well, here the judge said, all right, I'm going to let the answer of assault, but I'm going to keep out rape. What's wrong with that solution? Well, then it went further than that because although Ms. Cordero only said that she knew that her daughter was injured, when Ms. Tavera testified, she was allowed to testify that she was forced- with a gun to her head, she was forced down on her knees and physically assaulted, and then she was turned around and bent over and assaulted from behind. Now, you know, sometimes we have to put on our regular people hat and our logic hat and say, when a woman is forced onto her knees and then bent over from behind, we all know what that means. That is a blatant reference to a sexual assault slash rape, all of the above. So any effort that was made by the district court to sanitize this testimony by only calling it an assault rather than a sexual assault or a rape really was erased by the words that Ms. Tavera was allowed to use. And is this an evidentiary question reviewed for abuse of discretion or something else? Yes, it is an abuse of discretion, but then I think it takes us- it's all wrapped into the next point that- well, actually the third point that we raised, which is ineffective assistance of counsel. If your honors- as your honors said, if this was just a bad question that she never should have asked, then she shouldn't have asked it. And allowing this testimony in, if it was not in fact an abuse of discretion, then it has to be ineffective assistance of counsel. On that issue, I suppose there's a threshold question whether it's for us or needs to be left for a collateral attack, as we often do. Now, you're a new counsel, so we don't have the problem of the same counsel. So the other issue, I suppose, is whether the record is adequately developed for an ineffective assistance. And what do you think is needed in this record to avoid- to make the issue available to us now as distinguished from a remand? Well, the rule, of course, is that the issue has to appear on the record and there has to be sufficient evidence, correct, of what happened. I'm asking what more do you think would be needed? Well, I don't think anything, honestly, because- Well, then if nothing would be, we could decide it here. Sure, and that's why I raised it. Okay, so you're not urging that there be a remand for a collateral attack? I mean, there very well could be, and I'd be happy to take it back and do the 2255 petitions. But you're not saying this is the kind of case that, as to the ineffective assistance claim, it requires a remand? I don't believe that it is required, Your Honor, because defense counsel admitted that she made a mistake. You know, I believe that cases where these type of issues have to be decided in a 2255 are those where we need the testimony of the defense attorney. You know, we need to put him or her up on the stand and ask her, why did you do this? Or why didn't you do this? In this case, at the sidebar, defense counsel admitted that she asked a question that she shouldn't have and asked for the court's indulgence to withdraw that question and ask another one. So I don't see what we would need. There's no trial strategy here. You're going to hear the government say it doesn't meet the prejudice standard because of the overwhelming evidence of guilt. Oh, I'm sure they will. Well, that's why I'm giving you the chance to deal with it now. Yeah, of course. I mean, to say that, again, I think a lot of this goes back to the word, to the actual testimony that Ms. Tavera was allowed to give, which was that she was bent over, that she was put on her knees. No, no, no, but I'm going past that. Assuming you're right, that this was damaging testimony, on ineffective assistance, you've got to show prejudice, right? And if there's overwhelming evidence of guilt, you don't show prejudice, right? Would she have been convicted otherwise? I would argue no. I know. Yeah, I would argue no. But presumably that's something that needs to be fleshed out. I mean, you could make the arguments now, but that would also be taken up at a subsequent 2255. Yeah, absolutely. Absolutely, that could be. And the prejudice, I would argue, is overwhelming, which is why the court ruled to keep it out in the first place. In the pretrial motion in limine, she ruled against admitting the evidence and gave a very detailed explanation. A judge is necessarily ruling on considering prejudice when considering a motion of that sort.  I'm sorry. There may be further evidence. You know, you don't really know what the total picture is going to be. And it's a question of whether there was ineffective assistance in the first prong of Strickland, and that would be that issue. But here, assuming that there was some ineffective assistance and that the judge didn't react in a way that was favorable, then the next question is prejudice. And what is your response to that? Maybe we ought to wait for rebuttal for that, because you're going to presumably argue on that. Yeah, I mean, I would just argue that the prejudice, it all goes back to the unfair prejudice versus the probative value. And that came out in the district court thing. But the prejudice here- It's an assessment of whether the evidence should come in or not. Yes. The question of whether it would have affected the outcome of the trial had it been excluded is really the question of prejudice. In other words, counsel was ineffective, but it didn't matter because there was sufficient other evidence that no jury would have acquitted or found not guilty. Yeah, but I would argue that it's all intertwined together. Is that because if the prejudice was so great from this piece of evidence that the district court thought it important enough to keep out, then the prejudice of it being allowed in as a result of the conduct of defense counsel is all intertwined. It's that same prejudice. It's so unbelievably prejudicial that, A, the probative value was far outweighed, and, B, the mistake made by defense counsel was so egregious that the prejudice was just tremendous. I mean, we argued in our brief that basically once this happened, once the jury heard this, it was very difficult, if not impossible, to overcome. On your point about the evidence tags, why doesn't the judge's inquiry of the jury take that out of the case? It just wasn't enough. It wasn't enough? It wasn't enough. What more should have been done? To expect, as defense counsel had argued at the time, to expect one of the jurors to, in the face of that broad question, which I believe the question was, I'm paraphrasing, did you read the packaging or study the packaging of any of these three pieces of evidence? To expect one of the jurors to stand up and say, yeah, I read, and it said rape one. It was just asking too much of these lay jurors. And reading or studying could be different than glancing at it. We'd have to conclude that the jurors lied to the judge when they responded as they did? Well, I would argue also that there's a difference between glancing at and seeing the words and reading and studying. If I happen to look over and that says Jeffrey's on counsel's file, it doesn't mean I read it, I studied it. They could have just seen rape one and taken that together with the comments that Ms. Tavera was allowed to make that clearly pointed in the direction of a sexual assault slash rape. Taken together, it's very difficult to overlook that. And that was a mistake also that was committed by everybody in the courtroom, including defense counsel, who should have. Was there any discussion as to what would be asked of the jury before they were asked? It is my recollection that the judge just said, I will inquire of the jury to see. And after the inquiry, did defense counsel ask for a more refined question? I don't believe that he did. Or she did, excuse me. I should know better than to say. If your honors have no further questions, I'll rely on my brief for the remainder of the issue. Thank you very much for your time. Thank you. Good morning. May it please the court. My name is Saritha Kamadi Reddy. I'm an assistant United States attorney in the Eastern District of New York. The government is asking this court to affirm the convictions on counts one and two, vacate the conviction on count three in light of United States v. Taylor, and remand for resentencing. With respect to the two primary arguments that my friend on the other side has raised, let me first address the one that was just being discussed, the issue of polling the jury regarding whether they saw the exhibit labels on government exhibits one, two, and three. It's routine for courts, and indeed also this court, to trust that a jury follows instructions and testifies truthfully they are under oath when answering a judge's questions. Here, the judge asked a question. The record reflects that the jurors, as a group, shook their head no, that they had not inspected the exhibit labels. Can I just ask you, and you may not know this off the top of your head, the language that the judge used, was it inspect, read, see, notice? And, you know, if you don't have it handy, that's fine. I just wondered. I can pull that up pretty quickly, Your Honor. And it was, I believe the question was read. Let's see. Yeah, thank you. Before I send you back, we did send back to the jury room government exhibits one, two, and three, which respectively are an evidence bag containing evidence and boxes containing evidence. I would like to know whether any juror read or studied the labels on these exhibits. If any juror did, would you please raise your hand? Thank you. Thank you. Read or studied. Read or studied. And I think, Your Honor, one thing that's important to note about that question is it doesn't ask for jurors to admit that they did anything wrong. There's nothing wrong with reading or studying the labels. There's no reason to think a juror would be hesitant to answer honestly to that question. Furthermore, it's notable that the parties missed those labels. The court missed those labels until Tuesday morning. Those exhibits were not at issue in any way. Government exhibits one, two, and three were physical exhibits, a screwdriver, some duct tape. They didn't have any DNA or fingerprints on them. There's no reason that jurors would have been inspecting them closely. In fact, defense counsel at trial called them insignificant. And finally, I would note that the record of deliberations makes clear exactly what the jurors were focusing on. They repeatedly requested videos. They sent out multiple notes really focusing on whether the defendant could be convicted on the gun charges. And so I don't think that there's any reason to question the veracity of the jurors' responses to the judge's question. What else? How many words about are written on this tag? I'm sorry, Your Honor? How many words about are written on this tag? In other words, is it a tag that has a lot of words or just one or two? No, Your Honor. It's an evidence label. It's just a couple of words. It's crime, rape one. It's a standard evidence bag. It was approximately 11 by 14. It would be a label a few inches, maybe a couple of inches by a couple of inches on that bag. So you don't have to read three sentences to see the word rape. That's correct, Your Honor. You can't see it when you don't. That's correct, Your Honor. But the court, in denying the counsel's request for a mistrial, did note and she said, let's be frank, we all missed it and made the finding that the juror probably didn't read it, especially given the juror's responses felt that that was a sound conclusion. And I think the court asked previously whether defense counsel suggested additional questioning. Counsel noted her objection before and after the question, saying that she didn't believe any question would be enough but did not suggest specific follow-up questions in light of the inquiry. Turning back to the question about admitting the evidence, allowing Ms. Tavera to testify that she was physically assaulted. That was the testimony. It was not that it was sexual assault. It was a physical assault. I take counsel's point. There was testimony that she was on her knees and turned around. That does suggest a certain image and a certain type of crime. We have to acknowledge that. At the same time, though, that testimony was still limited. There was no testimony about whether. I mean, it seems like what you just said is a little contradictory. I mean, you seem to be acknowledging, which I appreciate, that this testimony, although it did not use the words sexual assault, it did not use the words rape, the way that it was described certainly could lead people to assume that that is what was being, that that's what occurred. And so if that is what this testimony is going to lead people to think, why isn't that prejudicial? I mean, the judge pre-trial noted that this allegation of rape, forced oral sex was highly inflammatory. I think that the standards she talked about was the idea when the crime that you're considering  I'd like to hear you address why it's not prejudicial, why it's not. I think for two reasons, Your Honor. I think it's the nature of the testimony. It was limited in the sense that it stopped there with respect to I was physically assaulted. You know, were you physically assaulted? Yes. And again, twice. And it didn't go further in terms of was it over the clothing, under the clothing? Was there penetration? Did she feel pain? No, of course not. But the suggestion would be of oral sex and penetration. That would be the suggestion. No explicit testimony on that. I understand, Your Honor. My point is that it's not just whether the evidence is prejudicial. It's whether it's unduly prejudicial. And it's those gruesome Sorry, you're speaking a little fast. I'm sorry. It's not just whether it's prejudicial. It's what? It's whether it's unduly prejudicial. And it's the graphic detail that presents the risk that a jury may be inflamed inappropriately and overwhelmed by that inflammatory testimony. Is that really the question? I mean, do you think that if the jury had heard her testify, I was raped, that they'll be less inflamed by that than if she gives the details? I mean, isn't the fact of a sexual assault what the concern was was going to be inflammatory? I think that the more details come in, the more there's a risk of inflaming a jury. I think that there's a spectrum there. It's not an on or off switch. The other side of this is to remember that it's a 403 balancing test. And the district court did find that this is relevant and direct evidence of the charged crime. The defendant was committing these acts in an effort. He preceded the acts by saying, I think you're playing games with me. He's trying to find the narcotics. He believes the woman is evading his questions. And he's threatening force, which is an element of a Hobbs Act robbery, in order to obtain the narcotics. And so it's direct relevant evidence. It was not only important to correct the record that had been made in the district court, but it was also important to rebut a defense that only arose during trial, which was that this was an inside job. That's a defense that defense counsel closed on and discussed at length in her closing. And the notion that Josie Tavera set up a robbery in which his own sister was sexually assaulted belies that defense. It directly responds to that defense that it's an inside job. And this also addresses one of the points counsel made about ineffective assistance of counsel. This evidence didn't just come in because defense counsel asked, quote, unquote, made a mistake or asked a question she shouldn't have. Once it became clear that the defense was going to be that this was an inside job, the fact that an assault occurred on a family member of one of the people who was alleged to be part of the conspiracy by the defense, and also the nature of that assault, the fact that it was somewhat sexual in nature becomes highly relevant. The probative value increases significantly. And I think any unduly prejudicial effect was still minimized by the limited nature of what came in. I would note to this court that, for example, Sheila Tavera's testimony lasted many pages. It was approximately 62 transcript pages, and this testimony spanned two pages. It wasn't extensive. It wasn't overdone. Right. How was it treated in summation? Both counsel mentioned it in summation. Government counsel certainly did, and defense counsel. That there was a physical assault. Yes. But what about the sexual nature of it? It was never called a rape. It was never called a sexual assault. It was a physical assault. I understand that. But the physical actions that were taken, that I said a minute ago or suggested a minute ago, suggested rape. How were they treated in summation? Your Honor, the government quoted the testimony in full, in summation, including the part about her being on her knees and bent over, and defense counsel responded more briefly without quoting those portions, of course. But I would also note on the prejudice point, the jury, this did not, whatever did come in, did not so overwhelm the jury that they returned a quick verdict. This case went to a jury on a Friday afternoon. They deliberated. They sent out several notes saying that they were unable to reach a verdict. One juror had to be dismissed because she was so anxious she couldn't handle deliberations. They deliberated for three days and ultimately returned a split verdict. They convicted on counts one and two and on the substantive count three, but they did not convict on brandishing a firearm. I guess I'm, I mean, again, that strikes me as something that could kind of go in either direction. The fact that this wasn't a quick verdict, in fact, suggests perhaps that they were struggling with the evidence, and so that would increase the likelihood that any one prejudicial piece of evidence potentially had an effect. I think, Your Honor, the record here helps us, and the jury was very explicit in its notes about what it was concerned with. It was concerned with video testimony. I'm sorry, the surveillance video. It appeared to primarily be concerned with whether the cooperator's testimony was corroborated by surveillance video, and so it repeatedly requested these surveillance videos for various elements of the crime. I think it's notable ultimately in the split verdict that the jury convicted on those parts of the charges where the cooperator was corroborated by surveillance video, including a bulge in the defendant's pocket that's captured on one of the surveillance videos, but didn't convict on the brandishing because there was no surveillance video of the defendant waving a gun around, and that's just the state of the evidence. I think the record shows the jury was very careful. They went through the evidence carefully and returned a reasoned verdict without being overwhelmed in any manner. If we thought the 403 balance was erroneously made by the trial court, does that require a reversal? Your Honor, it's an abusive discretion standard, but harmless error review still applies. So what would? Harmless error review still applies. So my point's about prejudice, both that this particular evidence did not overwhelm or prejudice the jury because their deliberations indicate that they were deliberate and careful, but also the point earlier about the strength of the evidence comes into play. The strength of the evidence here consists of cooperator testimony, again corroborated by surveillance video, as well as the defendant's own jail calls in which he discusses having run away from this thing that is at issue, and provides his ex-girlfriend specific details that could only be known to one of the participants about the robbery, including the co-conspirator's identity and the fact that a description of some of the other co-conspirators who were involved and the location and nature of the robbery, which was that it was a robbery for drugs and money. So on the question of ineffective assistance, what is your position? Your Honor, with respect to the opening the door question or with respect to the other points on the flight instruction? No, the other points about the assault, the relationship, what the lawyer did, well, opening the door on the assault. Okay. So as an initial matter, I would argue that that was a trial strategy because as defense counsel revealed this defense during the course of the trial, that they were going to claim that it was an inside job. So in that context, it made sense having obtained a favorable ruling pretrial to get as close to the line as possible. We see this all the time. It's effective lawyering. Get an effective pretrial ruling that precludes the government from putting in certain evidence and get as close to the line as possible to establish what you're trying to establish, which is no harm occurred in that apartment. And so I can argue that as a point in support of this notion that it's an inside job. I think that was the trial strategy. It was a sound trial strategy. The fact that it backfired slightly I don't think negates that. It's not that she was pursuing this strategy and it had negative results. I mean, the testimony, well, not the testimony, but what she said was this was a mistake, and I think you probably would agree that she certainly did not want for this evidence to come in. And so the fact that she made potentially this mistake in an attempt to serve a strategy doesn't mean that it's not deficient performance necessarily. I understand, Your Honor, but this Court's cases when evaluating proper performance has said that if counsel is pursuing a strategy and it backfires, that's not necessarily a basis to find objectively unreasonable conduct by the attorney. That happens sometimes at trial, and it's not that the Court reverses every time. Well, one point you're making, I think, here is that had the judge said, I'm going to let everything in, you know, I'm going to let the assault in, I'm going to call it a rape if you want, whatever, whatever, that that would have been not unreasonable for the judge to do in light of the defense that was being raised that was an inside job. Exactly, Your Honor. That was the next point I was going to move to, even regardless of counsel's question. I think as the government argued pretrial, the inside job defense was not apparent at this time, so this didn't come up in the motions and lemonade briefing. But our government argued pretrial, we maintain, it would not have been of abusive discretion for the Court to let in the evidence as direct evidence of the crime. It was. I don't think it was an abusive discretion either way. It was a discretionary call. But having heard the testimony come in and also being apprised of this inside job defense, certainly it was within the court's discretion, and the government would have asked for it anyway regardless of what precise question the defense asked. It was within the court's discretion to then revise her decision and let in some portion of noting that this individual was physically assaulted in the courtyard. Thank you. Thank you, Your Honors.